# United States District Court
## EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **In the matter of the search of:**<br>ONE YELLOW IN COLOR WITH A CLEAR CASE, APPLE I PHONE IMEI: UNKNOWN, CURRENTLY IN THE POSSESSION OF THE BUREAU OF ALCOHOL, TOBACCO, FIREARMS. AND EXPLOSIVES (ATF) - MUSKOGEE FIELD OFFICE AND MAINTAINED IN CUSTODY AT 1200 W OKMULGEE, MUSKOGEE, OK, WITHIN THE EASTERN DISTRICT OF OKLAHOMA. | Case No.  24-MJ-307-GLJ |

## APPLICATION FOR SEARCH WARRANT

I, Christopher Grizzle, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the **EASTERN** District of **OKLAHOMA** *(identify the person or describe property to be searched and give its location)*:

**SEE ATTACHMENT "A" (incorporated by reference)**

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT "B" (incorporated by reference)**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☒ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of Title 21, United States Code, Sections 841, and the application is based on these facts:

- ☒ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Christopher Grizzle, TFO Special Agent*
Alcohol, Tobacco, Firearms, and Explosives

Sworn to me:

Date:  September 26, 2024

City and state:   Muskogee, Oklahoma

_____
*Judge's signature*
GERALD L. JACKSON
UNITED STATES MAGISTRATE JUDGE
*Printed name and title*

EDOK - Search Warrant (Revised 5/13)

**AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER
RULE 41 FOR A WARRANT TO SEARCH AND SEIZE**

I, Christopher Grizzle, a Task Force Officer with the Alcohol Tobacco, Firearms, and Explosives (ATF), being duly sworn, state:

**INTRODUCTION AND AGENT BACKGROUND**

1. I am a federal law enforcement officer as defined under Rule 41(a)(2)(C) and am authorized to request this search warrant because I am a government agent who is engaged in enforcing federal criminal laws and I am within the category of officers authorized by the Attorney General to request such a warrant. I am a Task Force Officer (TFO) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). I am an Investigator with the Sequoyah County Sheriff Office and have been since 2019. During this employment I have served as an Investigator and a full time Task Force Officer (TFO) with the Bureau of Alcohol Tobacco Firearms and explosives (ATF). Before being hired by the Sequoyah County Sheriff Office in 2019, I served three years with the Cherokee County Sheriff's Office in Oklahoma.

2. I started my law enforcement career as a detention officer at the Sequoyah County Jail in the year 2000, and shortly thereafter, I attended reserve police academy in Sallisaw Oklahoma in 2002, for the Sequoyah County Sheriff Office.

3. In 2003 I successfully completed the Council on Law Enforcement Education and Training Academy as required by the State of Oklahoma for peace officer certification with the Sequoyah County Sheriff Office. As a Patrol Deputy I was involved in upholding the laws and statutes of the State of Oklahoma, limited to but not limited to Traffic stops, paper service, Court duties, making arrests and executing state search warrant and arrest warrants.

4.  In May of 2007 I was employed at the district 27 district attorney's office where mainly investigated highly complex narcotic distribution crimes, street crimes, as well as violent crimes involving firearms.

5.  In 2012 I was employed with the Bureau of Indian Affairs as Police Officer where I enforced Federal Laws on Indian Reservations, in 2014 I Joined the Division of Drug Enforcement within the Bureau of Indian Affairs where I Only enforced Federal drug laws on Indian Reservations and completed the Criminal Investigator Training Program (CITP) at the Federal Law Enforcement training Center in Glynco Georgia.

6.  In connection with my official duties as a Sequoyah County Investigator and ATF TFO, I Investigate criminal violations of Federal Firearms Laws, Federal Arson Burglary Laws, Federal Explosives Laws, and Federal Narcotics Laws. I have been the affiant for numerous state search warrants. I have been involved in multiple investigations over my career which have resulted in the seizure of controlled substances and firearms, resulting in the successful prosecution of individuals involved.

7.  During my career, I have received hundreds of hours of training, including training regarding the investigation of those who are involved in the illicit distribution of controlled substances and training regarding individuals who commit fraudulent acts. I have received training and have experience including, but not limited to, working in an undercover capacity, surveillance, management of confidential informants, drug-trafficking Conspiracies, money laundering, organized criminal activity, burglary, Larceny and homicide investigations, the preparation and execution of stolen property, firearm, and drug related search warrants and debriefing of informants and witnesses.

8. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure authorizing a search of a cellular telephone possessed by Stephanie Rodgers, who possessed methamphetamine with the intent to distribute. The search warrant would authorize the examination of a cellular telephone (1) Black in color, TLC Cellular Phone IMEI: 016373000461403, currently in the possession of the Bureau of Alcohol, Tobacco, Firearms. and Explosives (ATF) - Muskogee Field Office, and maintained in custody at 1200 W. Okmulgee, Muskogee Oklahoma within the eastern district of Oklahoma which is believed to contain evidence of violations of Title 21, United States Code, Section 841(a) (1), for any person to possess with the intent to distribute a controlled substance.

9. I am familiar with the facts and circumstances of this investigation. The facts set forth in this affidavit are based on, knowledge obtained from other law enforcement officers, my review of documents related to the investigation, conversations with others who have personal knowledge of the events and circumstances described herein, and review of open-source information including information available on the Internet. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact I or others have learned during the course of this investigation. Based on my training, experience and on my participation in this investigation, I know the following:

- a. Drug couriers and traffickers commonly use multiple methods of communication to arrange transactions and conduct business. Cellular telephones and other devices which access the internet are frequently used to send and receive messages over long distances;

b. Drug traffickers commonly use cellular phones or other electronic devices to communicate with users and sellers of illegal controlled substances, negotiate prices for illegal controlled substances, solicit sales of illegal controlled substances, facilitate transactions where illegal controlled substances are sold, and photograph or video record money and/or drugs obtained through illegal means;

c. Drug traffickers, including couriers transporting drugs, use Global Positioning System (GPS) devices to assist them in navigation from locations where they start a trip to transport drugs to the intended destination where they deliver the drugs, often a location thousands of miles from where their trip started;

d. Drug traffickers frequently maintain records, receipts, notes, ledgers, and other documents relating to the transportation, ordering, sale, and distribution of controlled substances. Drug traffickers commonly consign controlled substances to their clients and transporters that the aforementioned records, receipts, notes, ledgers, and other documents frequently have record of, and are maintained by, or accessed by, the use of cellular telephones or other electronic devices the traffickers have ready access to;

e. Electronic files can be easily moved from one cellular phone or electronic storage medium to another. Therefore, electronic files downloaded to, or created on one cellular phone can be copied to, or transferred to, most any other cellular phone or storage medium.

**IDENTIFICATION OF THE DEVICES TO BE EXAMINED**

10. The property to be searched is: (1) yellow in color with a clear case, APPLE I PHONE, IMEI: Unknown, referred herein after as the "Device." The Device is further described in Attachment A and is currently located at 1200 W. Okmulgee, Muskogee Oklahoma, within the Eastern District of Oklahoma.

11. The applied-for warrant would authorize the forensic examination of the Device listed in Attachment A for the purpose of obtaining the electronically stored data particularly described in Attachment B.

**PROBABLE CAUSE**

12. On August 19, 2024, Alcohol, Tobacco, Firearms and Explosives (ATF) Special Agents (SA's) and Task Force Officers (TFO's) met with a Sequoyah County Sheriff Office (SCSO) Confidential Informant (CI) #28-2021-812 in reference to purchasing one (1) pound of methamphetamine, methamphetamine is a Schedule II controlled substance, followed by an arrest, of Stephanie Rodgers ("RODGERS"). Prior to meeting with RODGERS, the CI was in communication via text message with RODGERS, from phone number 918-774-8354.

13. CI# 28-2021-812 has been a confidential source of information for the SCSO since approximately 2021 and the information that the CI has provided in the past, has been proven to be true and correct and has resulted in the confiscation of controlled dangerous substances and arrests.

14. Earlier in the day on August 19th, 2024, RODGERS informed the CI, that RODGERS would be able to deliver the methamphetamine to the Love's Travel Store, in Webbers Falls, Oklahoma, within the Eastern District of Oklahoma, by approximately 5:00 P.M. RODGERS

5

stated she was waiting for an address to go pick up the methamphetamine. RODGERS then sent an additional text message stating she wouldn't be able to meet at 5:00 P.M., and when the methamphetamine arrived at her location, she planned to weigh it and then drive to the Love's Travel Store in Webbers Falls, Oklahoma.

15. CI messaged ROGERS and asked RODGERS if she was on the road yet, RODGERS messaged the CI "I will be in 5 it just got here". RODGERS messaged the CI and stated, "updated travel time and will arrive at the Love's Travel Store at 8:06 P.M." During the conversations between the CI and RODGERS, SA's and TFO's moved into place in and around the Love's Travel Store in Webbers Falls, Oklahoma.

16. At approximately 7:45 P.M., ATF SA Madison Rebel working in an undercover capacity, along with the CI, who was equipped with a live audio recording device, traveled to the Love's Travel Store and parked awaiting the arrival of RODGERS.

17. At 8:06 P.M., a red in color GMC Canyon, bearing Oklahoma license plate number GPL-400 arrived at the Love's Travel Store and backed into a parking spot next to SA Rebel and CI. SA Rebel and CI exited the undercover vehicle and approached the GMC Canyon occupied by RODGERS. RODGERS instructed SA Rebel and CI to retrieve a bag in the bed of the truck. CI grabbed a pink bag and asked RODGERS if this was the bag, RODGERS stated no that's mine, the brown bag is yours. SA Rebel retrieved a brown bag which itself contained a large clear bag containing a white crystalline substance. The total weight of the white crystalline substance in the brown bag retrieved by SA Rebel weighed approximately one (1) pound.

18. SA Rebel informed RODGERS that the money for the methamphetamine was in the vehicle, which triggered the arrest team to initiate an arrest of RODGERS. Incident to arrest, and

based upon probable cause, agents searched the vehicle and located a glass smoking device, glass pipe, commonly used to smoke methamphetamine, in the console of the vehicle. Next to the glass pipe was a driver's license belonging to Stephanie RODGERS.

19. Also located inside the vehicle was a pink notebook that contained drug ledgers along with a leather case that also contained drug ledgers. Also within the vehicle was a pink zipper bag that contained a small plastic baggie containing a white crystalline substance, a plastic container containing a brown sludge substance, a glass vile that contained forty-seven (47) blue pills scorned M/30. A Portion of the white crystalline substance was later field-tested resulting in a positive reaction to the presence of methamphetamine. The brown sludge substance field tested positive to the presence of heroin. Also located inside the vehicle in the console area of the vehicle were two (2) cell phones, one yellow in color apple I-phone and one black in color TLC Cell phone.

20. After the search of the vehicle was complete, all evidence was relinquished to TFO Christopher Grizzle and transported to Muskogee Field Office and placed into temporary evidence locker until later sent to the Drug Enforcement Administration (DEA) laboratory for further analysis.

21. RODGERS was transported to the Muskogee County Jail for booking on State charges of Trafficking in Methamphetamine, Trafficking in Fentanyl, and possession of paraphernalia.

## **TECHNICAL TERMS**

22. Based on my training and experience, I use the following technical terms to convey the following meanings:

a.  *Wireless telephone*: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("OPS") technology for determining the location of the device.

b.  *Digital Camera*: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic films. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. *Portable media player*: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features suchas a calendar, contact list, clock, or games.

d. *GPS*: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involvedin such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radioa mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When aGPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, andsometimes altitude with a high level of precision.

e.      *PDA*: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments, or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f.      *Tablet*: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending, and receiving e-mail, and participating in Internet social networks.

g.      *Pager*: A pager is a handheld wireless electronic device used to contact an individual through an alert, or a numeric or text message sent over a

telecommunications network. Some pagers enable the user to send, as well as receive, text messages.

    h.    *IP Address*: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static- that is, long-term- IP addresses, while other computers have dynamic- that is, frequently changed- IP addresses.

    i.    *Internet*: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

23.    Based on my training, experience, and research, I know that the **Device** has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, as a GPS navigation device, PDA and Tablet, with an IP Address and can access the Internet. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device, and the communications between RODGERS through her cellular device is related to the illegal trafficking of controlled substances, including methamphetamine.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

24. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period on the device. This information can sometimes be recovered with forensics tools.

25. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.

Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

26. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

27. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

28. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Devices described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

_____
Christopher Grizzle
Task Force Officer (TFO)
Bureau of Alcohol, Tobacco, Firearms, and Explosives

Sworn on September 26, 2024:

_____
UNITED STATES MAGISTRATE JUDGE

14

## ATTACHMENT A

The property to be searched is: (1) Yellow in color with a clear case, APPLE I Phone IMEI: Unknown, currently in the possession of the Bureau of Alcohol, Tobacco, Firearms. and Explosives (ATF) - Muskogee Field Office and maintained in custody at 1200 W Okmulgee, Muskogee, OK, within the Eastern District of Oklahoma.

This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

Photos of the Device are attached.



**ATTACHMENT B**

1. All records on the Device described in Attachment A that relate to violations of Title 21, United States Code, Section 841(a) (1), and involve Stephanie Rodgers since November of 2023, including:

    a. lists of customers and related identifying information;

    b. records relating to communication with others as to the criminal offense above; including incoming and outgoing voice messages; text messages; emails; multimedia messages; applications that serve to allow parties to communicate; all call logs; secondary phone number accounts, including those derived from Skype, Line 2, Google Voice, and other applications that can assign roaming phone numbers; and other Internet-based communication media;

    c. records relating to documentation or memorialization of the criminal offense above, including voice memos, photographs, videos, and other audio and video media, and all ExIF information and metadata attached thereto including device information, geotagging information, and information of the relevant dates to the media;

    d. records relating to the planning and execution of the criminal offense above, including Internet activity, including firewall logs, caches, browser history, and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, records of user-typed web addresses, account information, settings, and saved usage information;

    e. application data relating to the criminal offense above;

f.  lists of customers and related identifying information;

g.  types, amounts, and prices of trafficked as well as dates, places, and amounts of specific transactions;

h.  any information related to sources of firearms (including names, addresses, phone numbers, or any other identifying information); information relating to instructions for transportation, obtaining and distributing drugs, information relating to fees for transportation;

i.  any information related to co-conspirators, stash house locations used to store illegal controlled substances, admissions of criminal offenses related to the dates referenced in the search warrant affidavit and information related to the acquisition or attempted acquisition of other illegal controlled substances in the future or already completed and related identifying information; admissions also relating to other times RODGERS was in possession of illegal controlled substances; any information related to sources of acquiring controlled dangerous substances, co-conspirators, aiders and abettors of information related to the illegal possession of firearms as well as others (including names, addresses, phone numbers, or any other identifying information); information relating to instructions for transportation, obtaining and storing illegally possessed controlled substances, information relating to means of transportation for illegally possessed substances; and

j.  all records to include bank records, checks credit card bills, account information, and other financial records, electronically stored records showing proof of

residence, proof of storage unit use and/or rentals, additional properties owned or documents reflecting straw purchases, real estate transaction documents, rental agreements or documents, as well as automotive sale or purchase or financing documents, electronically stored documents purporting to indicate income or salaries received reflecting employment, hours worked, wages earned, withholdings, W-2 and W-4 forms, (blank or executed), state and federal tax returns or documents pertaining to the preparation thereof, electronically stored records showing secret clientele lists, business associates, and diversification of wealth, United States Currency, and drugs, any other electronically stored tangible items evidencing the obtaining, transfer, secreting, and/or concealment of assets and/or money, electronically stored records, documents, receipts, and/or negotiable instruments which evidence the purchase of negotiable instruments and/or the structuring of currency transactions to avoid the filing of currency transactions reports and/or the laundering of monetary instruments, electronically stored documents evidencing fruits, instrumentalities, monies, records, and notations, associated with the crimes as described in paragraph 1 above.

2. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.